[No. 1077-2.    Division Two.    February 28, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIE HESS, *Appellant*.

*Judith S. Dubester*, for appellant.

*Henry R. Dunn, Prosecuting Attorney*, and *James E. Warme, Deputy*, for respondent.

*David A. Leen*, amicus curiae.

ARMSTRONG, C.J.—Willie Hess appeals from a jury conviction of grand larceny by means of embezzlement from a "Hi Neighbor" store, the combination grocery store and gasoline station which he had been managing.

The primary issue presented in this appeal concerns the apparent conflict between decisions of the United States Supreme Court and the Supreme Court of Washington on the constitutional issue of recoupment of attorney's fees incurred by an indigent criminal defendant. Secondary issues involve the failure of Hess' trial counsel to contact or subpoena an out-of-state witness and the sufficiency of the evidence. We affirm the conviction, but strike the condition of probation that the defendant repay his attorney's fees.

Well before trial, Hess apprised his court-appointed counsel of the existence in Portland, Oregon of a former supervisor for the "Hi Neighbor" organization. The defendant asserted that this individual, a personal friend, would be readily available to testify for the defense and that the attorney need not subpoena him. The witness was not contacted or subpoenaed by counsel, nor did he appear for trial.

After trial, the sentence imposed on Hess was deferred for 3 years and he was placed on probation, one of the conditions of which was that he reimburse the county for court costs, including the cost of paying his attorney.

As a matter of convenience, we turn first to Hess' contention that the failure of his attorney to subpoena his former supervisor as a witness on his behalf was prejudicial to his right to a fair trial. He argues that had counsel contacted the witness in Portland by letter or telephone, he would have determined that the witness was prepared to give a plausible explanation for a sizeable discrepancy that arose between book inventory and the physical inventory during the period Hess managed the store.

The State has submitted an affidavit of defense counsel containing his rationale for failure to subpoena the witness. His version is that Hess told him the witness was a friend and would appear voluntarily and that Hess informed him a subpoena was not necessary to compel attendance at trial. The witness' name was included on the defense list. On the night before trial and again after the first trial day, Hess repeated his assurances that the witness would be present to testify. Defense counsel swears further that he was somewhat reluctant to subpoena the witness, aside from the assurances of Hess, because counsel's investigation revealed that the witness was suspected by the prosecution of having conspired with Hess to illicitly dispose of the inventory of the store managed by Hess.[1] Counsel concluded that the witness "would be unfavorable." An additional reason for the failure to subpoena this out-of-state witness appears in the record, namely, that there would have been some substantial expense involved and counsel, being court appointed, was reluctant to incur the expense.

In answering Hess' contention that the failure of counsel to interview and subpoena a witness deprived him of a fair trial, we are cognizant of the rule that a court-appointed attorney representing an indigent defendant is

---

[1] Testimony adduced at trial by a former store employee tended to bear out this suspicion.

strongly presumed to be competent and the concomitant rule that this presumption will be overcome only by a clear showing of incompetence derived from the record as a whole. *State v. Piche*, 71 Wn.2d 583, 430 P.2d 522 (1967). We apply the following test:

> After considering the *entire record*, can it be said that the accused was afforded an *effective representation* and a *fair* and *impartial* trial?

*State v. Thomas*, 71 Wn.2d 470, 471, 429 P.2d 231 (1967).

Upon a review of the record, including the circumstances of the failure of the Portland witness to appear, we cannot state other than that the representation afforded Mr. Hess at trial was thorough and competent.

We do not agree with the apparent rationale of trial counsel that his court appointment to represent Hess is reason to curtail expense that might otherwise be incurred if he had been retained. There can be no price tag placed on justice. Appointed counsel for an indigent defendant should afford the client the same vigor of representation owed to a paying client. *See* ABA *Project on Standards for Criminal Justice, The Defense Function* § 3.9 (Approved Draft, 1971). This should ordinarily include looking beyond the assurances of the client, no matter how emphatic as to availability of a witness.

However, in this case the failure of counsel to subpoena a witness was justifiable. The decision of counsel not to subpoena a witness is a matter of legitimate trial tactics. *See State v. Thomas, supra; State v. Floyd,* 11 Wn. App. 1, 521 P.2d 1187 (1974). We find it a proper trial tactic here, where the witness proposed by a client was recognized by counsel to be potentially damaging by virtue of suspected implication in the crime.

We turn next to the question of the propriety of the recoupment by the county of attorney's fees as a condition of Hess' probation. Hess argues that such a condition is a violation of his constitutional right to counsel. He relies upon the case of *State ex rel. Brundage v. Eide*, 83 Wn.2d 676, 521 P.2d 706 (1974).

*Eide* involved an order of the Aukeen District Court entered at the time of appointment of counsel to defend an indigent against misdemeanor charges. The defendant, Brundage, was ordered to pay the fee of his attorney within 6 months of arraignment, if he was able without precluding his ability to meet necessary living expenses. The effect of the order was thus to defer for a period up to 6 months the determination of defendant's indigency in the legal sense. The Supreme Court affirmed a finding of the superior court that this order violated defendant's right to counsel guarantied by the sixth amendment to the United States Constitution and article 1, section 22 of the Constitution of the State of Washington. The court also found a violation of due process of law in the "absence of standards sufficient to enable the defendant to protect himself against arbitrary or discriminatory impositions of cost . . ." *State ex rel. Brundage v. Eide, supra* at 681.

Our Supreme Court was persuaded by *In re Allen*, 71 Cal. 2d 388, 455 P.2d 143, 78 Cal. Rptr. 207 (1969), in holding that the constitutional right of Brundage to counsel was unnecessarily "chilled" by the requirement that attorney's fees be repaid. The decision of the Oregon Court of Appeals in *State v. Fuller*, 12 Ore. App. 152, 504 P.2d 1393 (1973), which upheld the constitutionality of a statute allowing a sentencing court to require reimbursement of attorney's fees as a condition of probation, was discussed and rejected.

Now, of course, we have before us the decision of the United States Supreme Court in *Fuller v. Oregon*, 417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116 (1974), affirming the Oregon court. This decision explicitly repudiates the rationale of *In re Allen, supra*, which found a "chill" of the constitutional right to counsel in a requirement of repayment of attorney's fees. The *Fuller* court holds that the Oregon statute, providing as it does for recoupment of counsel's fees only if the convicted defendant is able and remains able to pay without financial hardship, contains sufficient safeguards to preserve its constitutionality. In-

cluded in those safeguards also are provisions that the convicted person "may at any time petition the court which sentenced him for remission of the payment of costs or of any unpaid portion thereof" (Ore. Rev. Stat. § 161.665 (4)), and that he cannot be held in contempt for failure to repay. if his default is unintentional or he has made a good faith effort to repay. Ore. Rev. Stat. § 161.685 (2).

*State ex rel. Brundage v. Eide, supra,* was decided April 25, 1974. *Fuller v. Oregon, supra,* was decided May 20, 1974. The State petitioned thereafter for a rehearing of *Eide* in view of *Fuller.* A rehearing was declined. This sequence of events appears to have forced upon us the dilemma of choosing between conflicting decisions of the United States and Washington Supreme Courts concerning the Sixth Amendment right to assistance of counsel. The United States Supreme Court is, of course, the ultimate authority concerning interpretation of the federal constitution. We have noted, however, that *Eide* affirms a superior court finding based partially on the Constitution of the State of Washington, as to which our Supreme Court is the final authority. Particularly in view of the fact that the Supreme Court of Washington had an opportunity to review its *Eide* decision in light of *Fuller,* we assume that it chose to permit *Eide* to stand—at least in part—on an independent, state constitutional right to counsel. We proceed to apply the State Constitution to the facts in the instant case. In so doing, we observe that the pertinent federal and state constitutional provisions are similar.

The sixth amendment to the United States Constitution provides, in part, that

[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense.

Article 1, section 22 of our State Constitution provides, in relevant part, as follows:

In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, . . . In no instance shall any accused person before

final judgment be compelled to advance money or fees to secure the rights herein guaranteed.

■ Our Supreme Court has held that, when words are similar in the state and federal constitutions, the language of the state constitutional provision should receive the same definition and interpretation as those which have been given to the like provision in the United States Constitution by the United States Supreme Court. *Tacoma v. Heater*, 67 Wn.2d 733, 409 P.2d 867 (1966); *State v. Schoel*, 54 Wn.2d 388, 341 P.2d 481 (1959); *State v. Vance*, 29 Wash. 435, 70 P. 34 (1902). However, the court has also decided cases involving similar state and federal constitutional provisions, in which it has stopped short of holding that the United States Supreme Court's interpretation of the federal constitution is controlling as to the interpretation of our constitution. According to this line of cases, the federal cases should be given "great weight." *Petstel, Inc. v. County of King*, 77 Wn.2d 144, 459 P.2d 937 (1969); *Herr v. Schwager*, 145 Wash. 101, 258 P. 1039 (1927); *Bowman v. Waldt*, 9 Wn. App. 562, 513 P.2d 559 (1973). *See also State v. Moore*, 79 Wn.2d 51, 66, 483 P.2d 630 (1971), (Rosellini, J., dissenting).

■ We find the better-reasoned rule to be that first enunciated in *Herr v. Schwager, supra,* and do not choose to bind ourselves to the interpretation of the United States Supreme Court given to the Sixth Amendment when we interpret the similar language of article 1, section 22 of our State Constitution. We instead follow the Supreme Court of Washington in *State ex rel. Brundage v. Eide, supra,* in holding that the requirement that Hess reimburse Cowlitz County for the cost of his attorney's fees as a condition of his probation is a violation of his right to counsel guaranteed by the Constitution of the State of Washington.

In so doing, we observe parenthetically that the Oregon statutory safeguards found by the United States Supreme Court to exist in *Fuller* are glaringly lacking in the sentence imposed upon Hess. Not only have we no statute containing careful guidelines, but the court attached no

proviso (as was done by the Aukeen District Court in *Eide*) that the attorney's fees must be repaid only if the defendant became financially able to do so.

■  We next consider the contention that the evidence against Hess was insufficient to sustain a conviction. The Washington State Supreme Court has most recently spoken to the issue in *State v. Randecker*, 79 Wn.2d 512, 487 P.2d 1295 (1971). In *State v. Braxton*, 10 Wn. App. 1, 5, 516 P.2d 771 (1973), this court undertook to synthesize the applicable rules:

> (1) The function of the trial or appellate court in reviewing a sufficiency question is to determine whether there is "substantial evidence" to support either the state's case or the particular element involved.
> (2) In considering the evidence, we must assume the truth of the state's evidence and view it most strongly against the defendant, allowing the state the benefit of all reasonable inferences.
> (3) Where the case is based entirely upon circumstantial evidence, the trial or appellate court's function is not to determine whether the circumstances are consistent only with the hypothesis that the accused is guilty. Such determination is for the jury. The court's only function is to determine whether there is "substantial evidence" tending to establish circumstances on which a finding of guilt may be predicated.

In applying the formula to this case, we find there is substantial evidence to support the verdict.

Hess also argues that the court improperly admitted evidence of other crimes. We are not persuaded by this contention.

The invalid condition of probation is stricken. This will not affect the otherwise valid terms of probation imposed. *People v. Dominguez*, 256 Cal. App. 2d 623, 64 Cal. Rptr. 290 (1967).

The judgment is affirmed.

PEARSON and PETRIE, JJ., concur.

Petition for rehearing denied April 7, 1975.

Review granted by Supreme Court May 21, 1975.